UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

| | |
|---|---|
| **ROBERT LEE** | **CASE NO. 2:21-CV-01830** |
| **VERSUS** | **JUDGE JAMES D. CAIN, JR.** |
| **STATE FARM FIRE & CASUALTY CO** | **MAGISTRATE JUDGE KAY** |

## MEMORANDUM RULING

Before the court is Defendant's Motion for Partial Summary Judgment to Dismiss Plaintiff's La. R.S. 22:1892 and La. R.S. 22:1973 Claims (Doc. 15), wherein State Farm and Casualty Company ("State Farm") moves the court to dismiss Plaintiff's, Robert Lee's, bad faith claims seeking penalties and attorney fees related to claims for additional payment on his policy for damages caused by Hurricanes Laura and Delta. Mr. Lee opposes the motion. Doc. 19. No reply was filed.

## I. BACKGROUND

This diversity action arises from a property insurance claim following Hurricane Laura, which made landfall on August 27, 2020. Doc. 15-2. On August 28, 2020, Plaintiff notified State Farm of a loss under State Farm homeowners policy 18-B7-W542-0 for damage to his property located at 420 Wilma Lane, Oberlin, Louisiana. To Mr. Lee's reported loss, State Farm assigned Claim Number 18-10R6-51J. *Id.* On the date of the loss, Mr. Lee's policy provided coverage for the following: the dwelling with a limit of $175,595.00; other structures with a limit of $17,560.00; additional coverages including personal property with a limit of $131,696.00; and additional living expenses with a limit

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

| | |
|---|---|
| **ROBERT LEE** | **CASE NO. 2:21-CV-01830** |
| **VERSUS** | **JUDGE JAMES D. CAIN, JR.** |
| **STATE FARM FIRE & CASUALTY CO** | **MAGISTRATE JUDGE KAY** |

## MEMORANDUM RULING

Before the court is Defendant's Motion for Partial Summary Judgment to Dismiss Plaintiff's La. R.S. 22:1892 and La. R.S. 22:1973 Claims (Doc. 15), wherein State Farm and Casualty Company ("State Farm") moves the court to dismiss Plaintiff's, Robert Lee's, bad faith claims seeking penalties and attorney fees related to claims for additional payment on his policy for damages caused by Hurricanes Laura and Delta. Mr. Lee opposes the motion. Doc. 19. No reply was filed.

## I. BACKGROUND

This diversity action arises from a property insurance claim following Hurricane Laura, which made landfall on August 27, 2020. Doc. 15-2. On August 28, 2020, Plaintiff notified State Farm of a loss under State Farm homeowners policy 18-B7-W542-0 for damage to his property located at 420 Wilma Lane, Oberlin, Louisiana. To Mr. Lee's reported loss, State Farm assigned Claim Number 18-10R6-51J. *Id.* On the date of the loss, Mr. Lee's policy provided coverage for the following: the dwelling with a limit of $175,595.00; other structures with a limit of $17,560.00; additional coverages including personal property with a limit of $131,696.00; and additional living expenses with a limit

of $52,679.00. Mr. Lee's hurricane deductible was $8,650.00. *Id.* Mr. Lee's policy provides that losses are paid on an actual cash value ("ACV") basis unless and until the property is repaired or replaced. *Id.*

On September 6, 2020, the State Farm adjuster assigned to inspect Mr. Lee's property contacted Mr. Lee about the initial inspection whereby Mr. Lee informed State Farm's adjuster that he was on the road, employed as a charter bus driver. *Id.* On September 8, 2020, State Farm's adjuster inspected only the exterior of Mr. Lee's property, at which Mr. Lee was not present. After the initial inspection conducted by State Farm on September 8, 2020, the replacement cost value ("RCV") loss for the roof was estimated at $10,488.88. Doc. 19-6.

On or around October 9, 2020, Hurricane Delta caused significant damages to Mr. Lee's property and exacerbated damages caused by Hurricane Laura. *Id.*

On or about February 12, 2021, a public adjuster on behalf of Mr. Lee inspected his property. *Id.* Mr. Lee's public adjuster estimate totaled a RCV loss of $113,225.62 for the interior and exterior damage to his home. *Id.* Moreover, a State Farm adjuster met with Mr. Lee's public adjuster on March 23, 2021, to conduct an initial inspection of the interior of the home and a supplemental inspection of the exterior of the home. Doc. 15-2. Based on this March 23, 2021 joint inspection, State Farm revised its estimate to reflect a RCV loss of $116,701.31. *Id.* This included a RCV loss relative to the roof of $29,647.19. Doc. 19-6. Plaintiff's public adjuster also revised his estimate following the joint inspection on March 23, 2021. Doc. 15-2. Mr. Lee's public adjuster's total revised estimate was increased to $115,108.98. *Id.* On April 7, 2021, only fourteen days after the second inspection, State

Farm tendered an ACV payment of $88,199.99 to Plaintiff for damage to the dwelling and an ACV payment of $528.30 in personal property damage. *Id.* Thereafter, multiple demands for the release of unconditional tenders were sent to State Farm. Doc. 15-1. On June 24, 2022, Mr. Lee brought the underlying suit for damages for breach of contract, bad faith claims adjusting, and other bad acts, including penalties under Louisiana Revised Statutes sections 22:1892 and 22:1973. Doc. 1. Specifically in the Complaint (Doc. 1), Mr. Lee claims that State Farm, after having been given full access to his property, chose to underpay his claims after a satisfactory proof of loss, causing him to be unable to make meaningful repairs to the property.

## II. <u>LEGAL STANDARD</u>

A court should grant a motion for summary judgment when the movant shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56. The party moving for summary judgment is initially responsible for identifying portions of pleadings and discovery that show the lack of a genuine issue of material fact. *Tubacex, Inc. v. M/V Risan*, 45 F.3d 951, 954 (5th Cir. 1995). The court must deny the motion for summary judgment if the movant fails to meet this burden. *Id*.

If the movant makes this showing, however, the burden then shifts to the non-moving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (quotations omitted). This requires more than mere allegations or denials of the adverse party's pleadings. Instead, the nonmovant must submit "significant probative evidence" in support of his claim. *State*

*Farm Life Ins. Co. v. Gutterman*, 896 F.2d 116, 118 (5th Cir. 1990). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249 (citations omitted).

A court may not make credibility determinations or weigh the evidence in ruling on a motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000). The court is also required to view all evidence in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Clift v. Clift*, 210 F.3d 268, 270 (5th Cir. 2000). Under this standard, a genuine issue of material fact exists if a reasonable trier of fact could render a verdict for the nonmoving party. *Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir. 2008).

Additionally, when the nonmovant bears the burden of proof at trial, "the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery an upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In such a situation, there can be no genuine issue as to any material fact, since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. *Id.* at 322–23 (quotations omitted). The movant's burden to show the lack of a genuine issue of material fact "may be discharged by showing—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325. Finally, courts may consider the evidence shown in a nonmoving party's opposition to motion for

summary judgment to determine whether it, "if reduced to admissible evidence, would be sufficient to carry [his/her/its] burden of proof at trial." *Id.* at 327.

### III. ANALYSIS

In Louisiana, "punitive damages are available only where authorized by statute." *Warren v. Shelter Mut. Ins. Co.*, 233 So. 3d 568, 586 (La. 2017). Louisiana Revised Statutes sections 22:1892 and 22:1973 allow plaintiffs to recover punitive damages when insurers arbitrarily or capriciously fail to pay a claim. Additionally, under Section 22:1892(b)(1), plaintiffs may recover attorney's fees. Sections 22:1892 and 22:1973 are penal in nature and thus must be strictly construed. *Reed v. State Farm Mut. Auto. Ins. Co.*, 857 So.2d 1012, 1020 (La.2003). Lastly, the conduct prohibited by Sections 22:1892 and 22:1973 is "virtually identical: the failure to timely pay a claim after receiving satisfactory proof of loss when that failure to pay is arbitrary, capricious, or without probable cause"; however, under Section 22:1973, the time period for payment is 60 days instead of 30 days in Section 22:1892. *Hibbets v. Lexington Ins. Co.*, 377 F. App'x 352, 355 (5th Cir. 2010) (quoting *Reed*, 857 So2d at 1020) (internal quotations omitted).

Because State Farm moves for partial summary judgment on bad faith claims that Mr. Lee lodged pursuant to Sections 22:1892 and 22:1973, State Farm must identify a lack of evidence to support Mr. Lee's claims. *See Celotex*, 477 U.S. at 325. Thereafter, Mr. Lee, the nonmovant, must show the Court that there is evidence to carry his burden of proof at trial for claims under Sections 22:1892 and 22:1973. *Id.* At 327.

**A. Bad Faith Claim under La. R.S. § 22:1892**

Louisiana Revised Statutes section 22:1892 subjects an insurer to the mandatory imposition of penalties and attorney fees when it is arbitrary and capricious in failing to tender the undisputed amount or make a written offer to settle a claim within thirty days of satisfactory proof of loss. Specifically, Section 22:1892 provides for penalties in an amount up to fifty percent of "the amount found to be due from the insurer to the insured[.]" To prevail under Section 22:1892, a claimant must establish the following: (1) that the insurer received satisfactory proof of loss; (2) failed to pay the claim within the applicable statutory period or failed to make a written offer to settle the claim; and (3) that the failure to timely tender a reasonable amount was arbitrary, capricious, or without probable cause. *Bourg v. Safeway Insurance Company of Louisiana*, 300 So. 3d 881, 891, (La. Ct. App. 1st Cir. 2020).

### 1. *Whether State Farm's initial inspection constituted a satisfactory proof of loss*

Proof of loss is "that point in time when the insurer has adequate knowledge of the loss." *Cotton Bros. Banking Co. v. Indus. Risk Insurers*, 941 F.2d 380, 386 (5th Cir.1991) (citing *Hart v. Allstate Ins. Co.,* 437 So.2d 823 (La.1983). Furthermore, "'proof of loss' is a flexible requirement to advise the insurer of the facts of the claim." *Austin v. Parker,* 672 F.2d 508, 520 (5th Cir.1982). Additionally, the "proof of loss is not required to be in any formal style." *Sevier v. U.S. Fid. & Guar. Co.*, 497 So. 2d 1380, 1384 (La. 1986). In other words, "[s]o long as [the insurer] receives enough information, the manner in which [the insurer] obtains the information is immaterial." *Austin,* 672 F.2d at 520.

Here, State Farm moves the court to dismiss Mr. Lee's claim for bad faith penalties under La. R.S. § 22:1892. Doc. 15. Moreover, State Farm denies that its initial inspection

constituted a satisfactory proof of loss because that inspection did not make State Farm fully apprised of Mr. Lee's claim because it was for the exterior only. Doc. 15-2. State Farm does not dispute that it conducted its initial inspection on September 8, 2020, but it does dispute the initial inspection was "that point in time when [State Farm had] adequate knowledge of the loss." *Cotton Brothers*, 941 F.2d at 386. State Farm clams that since it only inspected the exterior, it was not a full inspection, which would impart sufficient knowledge of the loss to satisfy as a satisfactory proof of loss. Doc. 15-2. On the other hand, in the Complaint (Doc. 1), Mr. Lee alleges that State Farm's initial inspection of his property constituted a satisfactory proof of loss wherefrom he should have been paid on his claim within 30 days. La. R.S. § 22:1892 (2022). Contrary to State Farm's seemingly rigid definition of a satisfactory proof of loss, "it is a flexible requirement to advise the insurer of the facts of the claim," *Austin,* 672 F.2d at 520, it "is not required to be in any formal style," *Sevier*, 497 So. 2d at 1384, and "[s]o long as [the insurer] receives enough information, the manner in which [the insurer] obtains the information is immaterial," *Austin,* 672 F.2d at 520. Accordingly, State Farm was made aware of Mr. Lee's loss when it conducted its initial inspection on September 8, 2020, irrespective of the fact that it chose to examine the exterior only. Therefore, the Court finds that Mr. Lee has presented sufficient evidence to allow a reasonable jury to find that State Farm was provided with a satisfactory proof of loss. *See Celotex*, 477 U.S. at 327.

> **2. Did State Farm fail to pay the claim within the applicable statutory period or fail to make a written offer to settle the claim?**

Following the initial inspection, State Farm asserts that Mr. Lee had no value remaining from the ACV loss after netting out depreciation and his deductible; that it communicated this information to Mr. Lee; and that the initial inspection was not a satisfactory proof loss. Doc. 15-2. First, State Farm claims that on September 6, 2020, its adjuster assigned to inspect the property contacted Mr. Lee to schedule the initial inspection. Doc. 15-2. During this conversation, State Farm maintains that Mr. Lee informed its adjuster that, due to Plaintiff's employment as a charter bus driver, Plaintiff would be unable to attend the first inspection of his residence. *Id.* According to State Farm, Mr. Lee and it agreed that its adjuster would inspect the exterior of the property for damages and that Mr. Lee could submit a supplemental claim for any additional interior damages that he found once he returned to the property. *Id.* Next, on September 8, 2020, the State Farm adjuster inspected the exterior of the property and found damage to the dwelling roof, the garage door, barbecue grill, flagpole, and an antenna. *Id.* Prior to leaving the premises, State Farm claims that its adjuster called Mr. Lee, advised him of its adjuster's findings, and recommended that Mr. Lee tarp the damaged section of the roof to prevent further interior damage. On September 23, 2020, State Farm asserts its adjuster spoke with Mr. Lee to discuss the estimate whereby its adjuster explained to Mr. Lee that the total amount of the damage estimated for the exterior of his home, after applying depreciation, was below the deductible; therefore, no ACV payment would be issued. *Id.* State Farm then claims it mailed Mr. Lee the estimate, the summary of loss, and the settlement letter, which stated that applicable replacement cost benefits would be paid

when repairs were completed pursuant to his policy. *Id.* Finally, State Farm claims they never heard back from Mr. Lee and, thus, closed its file. *Id.*

Notwithstanding State Farm's assertions that it communicated with Mr. Lee throughout the claims process, in his April 6, 2022 deposition, Mr. Lee contends that he never received a payment, report, or settlement letter after the initial inspection that constituted a satisfactory proof of loss. Doc. 19. Additionally, Mr. Lee alleges the following:

> After the initial inspection of the outside State Farm made no tender to plaintiff, concluding that the damages did not exceed depreciation and the deductible. State Farm conducted a second inspection after this litigation was filed. After that second inspection State Farm estimated the RCV loss as $116,701.31. This included a total RCA loss relative to the roof of $29,647.19. After the initial inspected conducted by Mr. Dyess on September 8, 2020, the RCA loss for the roof was estimated at only $10,488.88. According to State Farm's own inspector, its first inspector underestimated the roof repair/replacement costs by $19,158.31.

Doc. 19-6. Taken as true, State Farm's failure to communicate the determination of non-payment together with the significant underestimate provide sufficient evidence for Mr. Lee to carry his burden of proof at trail to whether State Farm exceeded the 30-day window for payment or written offer to settle the claim after a satisfactory proof of loss. *See Celotex*, 477 U.S. at 327.

### 3. *Is State Farm's failure to timely tender is arbitrary, capricious, or without probable cause?*

Under the third, "fact-intensive" factor of Section 22:1892, the failure to timely tender a reasonable amount must be arbitrary, capricious, or without probable cause. *Bourg*, 300 So. 3d at 891. The Louisiana Supreme Court has held the phrase "arbitrary,

capricious, or without probable cause" synonymous with "vexatious." *Guillory v. Lee*, 16 So. 3d 1104, 1127 (La. 2009) (collecting cases). A vexatious refusal to pay means unjustified, without reasonable or probable cause or excuse: both phrases describe an insurer whose willful refusal of a claim is not based on a good-faith defense. *Id.* (cleaned up). Lastly, "the arbitrary and capricious aspect of the bad-faith penalty inquiry requires a factual finding of the reasonableness of the [liability] dispute, *i.e.*, a reasonable defense, as well as a finding that the insurer acted in good faith in its reliance upon that reasonable defense." *Thibodeaux v. Arvie*, 226 So. 3d 1229, 1235 (La. Ct. App. 3d Cir. 2017), *writ denied*, 228 So. 3d 1207 (La. 2017).

Here, State Farm claims that after the initial inspection of the outside of Mr. Lee's house, it made no tender to plaintiff because the damages did not exceed depreciation and the deductible. Doc. 15-2. Next, State Farm's maintains that it mailed this information to Mr. Lee. *Id.* Mr. Lee, however, stated in his deposition that he neither received notice from State Farm of a date for the initial inspection nor anything in the mail from State Farm identifying the damages from the initial inspection. Doc. 19. Interestingly enough, Mr. Lee also stated in his deposition that State Farm told him that the report and settlement letter were sent to him by United States Postal Service Certified Mail, which provides the sender with a mailing receipt and electronic verification that an article was delivered or that a delivery attempt was made. *Id.* Oddly however, State Farm failed to mention in the instant motion that it had used Certified Mail, much less that it had knowledge of any verification of receipt by Mr. Lee.

Next, State Farm denies that its initial inspection constituted a satisfactory proof of loss. Doc. 15-2. In fact, State Farm alleges that it was not fully apprised of the insured's claim until March 23, 2021, when its adjuster was finally given access to the interior of the home for inspection, *i.e.*, the joint inspection. Docs. 15-2, 19. This was also State Farm's second inspection, which followed Mr. Lee's inspection that occurred in February. *Id.* After the joint inspection, State Farm maintains that it paid the Plaintiff's claim on April 7, 2021, which was 14 days from the only inspection that yielded a satisfactory proof of loss. *Id.* Also, State Farm argues, worst case, that its April 7, 2021 payment was within the required 30-day statutory period that commenced when Mr. Lee's satisfactory proof of loss was received by it on March 9, 2021. *Id.* Lastly, State Farm concludes that the third element is immaterial because Plaintiff is *de facto* unable to prove the insurer's failure was "arbitrary, capricious, or without probable cause" due to the fact that there was no failure to pay. *Id*

Also, State Farm's justifications for nonpayment post initial inspection vary from that it owed Mr. Lee no payment because of the depreciation and deductible reduced value of the exterior only loss to claiming that it was not fully apprised because only the exterior of the home was inspected. *See* Doc. 15-2. Practicality, the second justification is superfluous if, as State Farm asserts, Mr. Lee's deductible eclipsed his loss. However, because Mr. Lee has alleged that the non-payment was based on a misrepresentation of loss imputed to State Farm's initial inspection, it then becomes expedient for State Farm not to trigger Section 22:1892, *i.e.*, to avoid a determination that the initial inspection prompted a satisfactory proof of loss. *See* Doc. 19. Hence, State Farm's current position that it was

not fully apprised of the insured's claim until March 23, 2021, when its adjuster was finally given access to the interior of the home for inspection, and it thereafter met all the timing requirements set forth in Section 22:1892. *See* Doc. 15-2. Thus, taking Mr. Lee's evidence as true and most favorable to the non-moving party—that State Farm failed to sufficiently communicate with him the date of the initial inspection and its subsequent findings of damage, that State Farm's initial inspection was a gross underestimate, and that State Farm's justifications appear arbitrary—Mr. Lee has adduced sufficient facts to allow the factfinder to determine that State Farm acted arbitrarily and capriciously as to his claim. *See Clift*, 210 F.3d at 270.

Although a fact-intensive inquiry lays ahead, in sum, Mr. Lee has put forth enough evidence to carry his burden of proof at trial such that the factfinder could find that the initial inspection of the exterior of the home met the standard of a satisfactory proof of loss, that no payment followed, and that State Farm's excuses are vexatious and unreasonable. Accordingly, Mr. Lee's Complaint (Doc. 1), Opposition (Doc. 19), and Statement of Contested Facts (Doc. 19-6) allege sufficient facts to avoid summary judgment on his Section 22:1892 claim.

### B. Bad Faith Claim under La. R.S. § 22:1973

Section 22:1973 requires insurers to adhere to a standard of good faith and fair dealing. La. R.S. § 22:1973(A) (2022). An insurer breaches its duty to adjust claims fairly and promptly and make a reasonable effort to settle with the insured or the claimant if it knowingly commits or performs any of the following acts: misrepresents pertinent facts; fails to pay a settlement within thirty days; denies coverage without notice or consent;

misleads a claimant as to the applicable prescriptive period; arbitrarily, capriciously, or without probable cause, fails to pay a claim within sixty days of a satisfactory proof of loss; or fails to pay pursuant to Section 22:1893 arbitrarily or capriciously. *Id.* § 22:1973(A), (B) (2022). Lastly, an insured may recover damages in the amount of two times the damages sustained or five thousand dollars, whichever is greater, based on an insurer's violation of its duty of good faith and fair dealing. *Id.* § 22:1973(C) (2022).

First under subsection (B)(1), a "[m]isrepresentation can occur when an insurer either makes untrue statements to an insured concerning pertinent facts or fails to divulge pertinent facts to the insured." *McGee v. Omni Ins. Co.*, 840 So. 2d 1248, 1256 (La. Ct. App. 3d Cir. 2003), *writ denied*, 860 So. 2d 1149 (La. 2003), *and writ denied*, 860 So. 2d 1149 (La. 2003). Furthermore, insurers can be found liable under subsection (B)(1) for misrepresenting or failing to disclose pertinent facts not limited to only those facts relating to coverages. *Kelly v. State Farm Fire & Cas. Co.*, 169 So. 3d 328, 344 (La. 2015). This stems from "a duty to inform the insured . . . and generally keeping the insured apprised of those facts necessary for the insured to make a decision that is in their own personal interest." *E.g., Kelly v. State Farm Fire & Cas. Co.*, 559 F. App'x 316, 321–22 (5th Cir.), *opinion withdrawn and superseded on reh'g,* 582 F. App'x 290 (5th Cir. 2014), *certified question accepted,* 152 So. 3d 888 (La. 2014), *and certified question answered*, 169 So. 3d 328 (La. 2015). For example, in *McGee*, an insurer was found to have violated subsection (B)(1) when it "consistently failed to communicate the status of the claim to [the insured] on a regular basis and, when it did communicate with the insured, it failed to communicate the pertinent facts necessary for [the insured] to consider in determining what was in her

personal interest." *Kelly*, 559 F. App'x at 322 (quoting *McGee*, 840 So. 2d at 1256) (internal quotations omitted).

Here, Mr. Lee, in his deposition, indicates that there was one conversation with State Farm following Hurricane Laura, which was about scheduling an inspection. Doc. 19. Moreover, Mr. Lee states that during this conversation State Farm's inspector never set a date for inspection and thereafter conducted one without his knowledge. Doc. 19. Next, Mr. Lee stated in his deposition that State Farm told him that the settlement offer from the initial inspection was sent certified mail but also that he never received anything from State Farm in the mail. Doc. 19. In sum, these facts, taken as true and in the light most favorable to the nonmovant Mr. Lee, support a finding that State Farm failed to perform its duty to keep Mr. Lee informed.

On the other hand, State Farm does not address any Section 22:1973 claims that relate to the initial inspection. Instead, State Farm maintains that after the joint inspection that Mr. Lee was timely paid based on State Farm's higher estimate compared to Mr. Lee's own adjuster, and thus his Section 22:1973 claim should be dismissed. Doc. 15-2. Mr. Lee, however, points out that, according to State Farm's own inspector, State Farm's estimate for roof repair/replacement costs following the joint inspection was $19,158.31 greater than its initial inspection. Doc. 19-6. Thus, Mr. Lee claims that State Farm's own inspector greatly underestimated the roof/repair cost during the initial inspection. Doc. 19. Consequently, Mr. Lee asserts that the initial inspection of the property was inadequate and did not accurately account for the full extent of the damages to the property. *Id.* In short, Mr. Lee has presented sufficient evidence, when taken as true, that the gross underestimate

from the initial estimate could be found to be a misrepresentation under subsection (B)(1)—that State Farm failed divulge the true extent of his damage following the initial inspection. *See Kelly*, 559 F. App'x at 322; Doc. 19.

Furthermore, such a wide disparity between the initial and second inspections' roof estimates could support a finding of arbitrariness insofar that the disparity was *sine qua non* for Mr. Lee not receiving payment within 60 days as he was entitled to under subsection (B)(5). *See* Doc. 19. Thus, the Court finds Mr. Lee has provided sufficient, specific facts showing that he could prevail at trial as to subsections (B)(1) and (5) for misrepresentation of pertinent facts and arbitrarily failing to pay within 60 days, respectively. *See* La. R.S. § 22:1973.

In sum, Mr. Lee in the Complaint (Doc. 1), Opposition (Doc. 19), and Statement of Contested Facts (Doc. 19-6) provide sufficient evidence to avoid summary judgment on his Section 22:1973 claim.

### IV. CONCLUSION

For the reasons stated above, State Farm's Motion for Partial Summary Judgment to Dismiss Plaintiff's La. R.S. 22:1892 and La. R.S. 22:1973 Claims (Doc. 15) is **DENIED**.

**THUS DONE AND SIGNED** in Chambers on this 24th day of October, 2022.

_____
**JAMES D. CAIN, JR.**
**UNITED STATES DISTRICT COURT JUDGE**